JUSTICE GRAY,
specially concurring.
I concur in the Court’s opinion in all regards and specially concur here on issue 1 in order to respond to the dissent’s presentation of Mr. Salsbury’s testimony in this case.
Issue 1 is whether defendant was negligent as a matter of law by virtue of its violation of the Uniform Building Code. The Court recounts the clear and uncontroverted evidence — including that of Mr. Salsbury — that the UBC was violated and determines, on that basis, that the District Court erred in not granting plaintiff’s motion for judgment notwithstanding the verdict. The dissent presents a picture of Mr. Salsbury’s testimony suggesting that Mr. Salsbury equivocated and, thus, created a jury question regarding whether the UBC was violated. Because it is my view that the dissent takes the Salsbury testimony out of the context which is relevant here, I set forth Mr. Salsbury’s unequivocal testimony that the altered portion of the store at issue here violated the UBC:
Q. At the time that Doug was injured, did the area accessed through the door, off of the store manager’s office, and in particular the area where Doug Pierce fell through the suspended ceiling, *120 conform to the minimum safety standards ofthe Uniform Building Code?
A. No.
Q. If the door would have been removed and the opening patched over with sheet rock and studs, as was called for in the clarification drawing R17, would the building at that point have conformed to the provisions of the Uniform Building Code?
A. I believe that it would, that space would have been made non-accessible.
Q. Do you consider this door, in and of itself, to be a hazard, Mr. Salsbury, or does it gain access to a hazard?
A. It gains access to a hazard.
Q. So the real — Let me ask you this, did the same hazard exist that claimed Mr. Pierce as its first victim prior to the remodelling project?
A. No.
Q. As the owner’s representative, what is the owner’s attitude as to that door being left there?
A. We preferred that it be sealed off.
Q. Because it creates a dangerous situation?
A. Yes.
Q. The real part of this case, Mr. Salsbury, would you agree, is that there was a condition inside of this storage area which was unsafe to human life at the time that Mr. Pierce was using that space and at the time that he was injured on May 21, 1988?
A. Yes.
Q. Let’s assume for a minute that under section 104(B) that leaving the door here asitwas at the time ofthe accident, unlocked, no warning signs, no warning signs inside the area, no barricade around the area, but as it existed at the time of the accident, and under section 104(B), did that constitute a condition which was a hazard to human health and safety?
A. Yes, in my opinion it did.
Q. So, in other words, under any of the scenarios that we have discussed, that area, at the time of the accident, had to conform to the minimum requirements of the Uniform Building Code?
*121 A. I believe so, yes.
Q. In other words, the real hazard that this whole lawsuit is about isn’t simply the fact that a door was left in the contravention of your order and the contravention of the contract documents, in contravention of the architect’s duty, but the real gut of the lawsuit is, is that door allowed access to a hidden hazard that claimed Mr. Pierce as its first victim, correct?
A. Yes.
Nothing in this testimony equivocates on whether the requirements of the UBC were met. Mr. Salsbury’s testimony establishes without question a violation of section 104(b), which prohibits alterations to an existing building from causing the building to become unsafe or dangerous to human life.
JUSTICE NELSON:
I join in the special concurring opinion of Justice Gray.